Moving on to the next case which is 21-11019 Arkin v. Smith Medical Partners. I'll give you some time to get settled. A lot of big crowd. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah.   Yeah. Yeah. Yep, very well. Okay, Mr. Herra, you've got 10 minutes to start. You've reserved five for rebuttal. You may proceed when ready. Thank you, Your Honor. In place of court, Glenn Herra for the appellants, Anderson and Monza, and Dr. Arkin. We are here on review of the district court's order denying my law firm, Anderson and Monza, any share of the $1.125 million attorney fee awarded in the class action settlement in this case under the Telephone Consumer Protection Act. Anderson and Monza and our client, Dr. Arkin, we filed this class action. We identified the cause of action. We litigated the case. But in the end, the district court held that we provided no substantial and independent benefit to the class, justifying an award from the settlement negotiated by Bob Cash. Can you do me a favor and give your best shot to defending the merits of what I'll call the Arkin II settlement, the one that went down in Illinois? Sure. I mean, it just strikes me. So maybe just in stages, why was it dismissed in Middle District of Florida and refiled in Illinois? Sure. Without divulging any client confidences, of course. But what was the reason that it was refiled in Illinois? Right. I want to make clear. I wasn't at the mediation where that deal was negotiated. And even if I was, I couldn't discuss what was discussed. But objectively, why would one dismiss in Middle District of Florida and refile in Illinois? Both the Smith defendants and Anderson and Wanza are located in the state of Illinois. Anderson and Wanza has settled many cases in Lake County, Illinois. There's a more streamlined process there than taking up the resources of the federal court. It was for the convenience of the parties to be closer to the forum. Did the attorney's fee issue drive the case to Illinois? Is that what it was? No. That's the impression that I have. The case went to Illinois because of the attorney fee position the court would take, vis-a-vis the district court. You know, the district courts in the 11th Circuit will also award the same fee that was contemplated in the Lake County. Well, then I can't understand why dismiss the district court case here. Parkin won. Right. The convenience of the forum is the only reason I can give. And there was another reason I'm not privy to it. Do I understand correctly that in moving the case to Illinois, you also subjected some of the plaintiff class to statute of limitations problems that they might not otherwise have had?  That's not correct, Your Honor. Okay. And I want to say the parties agreed that the standard here is did we confer a substantial and independent benefit on the class apart from what Bokash did? And the district court said no, and that was an abuse of discretion for two main reasons. First, if Anderson and Wonsa had not filed the Arkin litigation within the statute of limitations, before your statute of limitations on these claims, and sent the notice of the Arkin settlement in Illinois, the Preston plaintiffs and Bokash would never have known there was a case to be had against the Smith defendants. They admit that. They say that they knew nothing about this case until they received the notice of the Arkin settlement. So if we have the only case on file, this is not a case where like the district court analogized this case like to the in re ascendant securities litigation where there's a stock drop and there's a dozen cases filed immediately that are all copycats, you know, alleging securities fraud. The district court selects one plaintiff as the lead plaintiff, one counsel as lead counsel. They settle the case, and then at the very end, you know, the firm number 12 that did not get appointed lead counsel comes in and says, well, I should get a piece of the attorney for you. And the court in that case circumstance rightly says you didn't create any benefit. You just threw your hat in the ring with a bunch of other plaintiffs to see if you could get the lead plaintiff position. The strong part of your case is that you did create a benefit. The weak part of your case is the shameful attempt to subordinate the interest of the class in favor of the attorney's fee that awaited your client, your firm in Illinois. Now, the question I'd like to ask is, do you have any case, any decision, or any good syllogism for us that regardless of what the motive may have been for transferring a piece of that and getting what, from my calculations, would be a 11-star-type fee if you use a 11-star formula, as opposed to the formula of $10,417 an hour for each of the hours that the firm put in the case? Do you have any case or decision that says it doesn't matter so long as you've conveyed a benefit for the class members later, it doesn't matter whether there was what's called inequitable conduct that got you out of the case as far as counts? Your Honor, I disagree, obviously, that there was inequitable conduct. But to answer your question, I don't have any case that's like this case. I mean, I have never seen anything like this before. I've looked where an objector comes in, torpedoes a settlement, and then settles the case with the defendant. And uses the 1,600 claim forms that were filed in our case, in the Arkins settlement, and just migrates them. You're back to the substantial benefit as opposed to how the settlement became undone. I wonder if it was just breathtakingly inequitable, what I believe the firm did in this case. And my question is only, are you still entitled to some fees that have caused a substantial benefit? And apparently you're telling me it's consistent with what I found, that you haven't found a case on that. That's correct. I don't have a case on that. I would argue that it's correct. It does not matter if the court thinks that the Arkin 2 settlement was inappropriate or not in the best interest of the class. I think it was. Let me ask you real quick, just so I'm clear on this, and I'll leave you alone. And that is, if we agree, and we agree that you're entitled to some attorney fees, where do they come from? They come from the same place as Pressman Counsel's attorney fees, from the settlement fund. It's a percentage of a common fund. Does it come in addition to the Bok attorney fees or out of the Bok attorney fees? No, Bok had sought 25% of the settlement fund as attorney's fees. The dispute is over how that 25% is allocated. Okay, so it would come out about Bok's present 25%, tentative 25%. That's correct. Where was it? Correct. We are not seeking to take any additional funds from the class members. All right, so I have a follow-up to Judge Karn's question about where do they come from. So as I read 23H, all it says is, in a certified class action, a court may award reasonable attorney's fees and non-taxable costs that are authorized by law or by the party's agreement, right? The TCPA is not a fee-shifting statute, right? Correct. So these are not authorized by law, at least to the extent that by law means by statute. Don't worry. I'll get to where I think you're – and there's no provision in the contract that provides for fee-shifting, correct? There's no provision of the Pressman settlement that allows for fees to Anderson. So I think then where we are left is with this sort of ethereal principle, maybe this gets crammed into by law within the meaning of 23H, that's been established for 100 years maybe that a court can award fees in order to do equity in a particular situation, right? Correct. It's the common fund doctrine. So, I mean, I think then if that's the source of the court's authority to award fees, to do equity, now we're right back into Judge Korn's bucket about equitable conduct and inequitable conduct, and wouldn't the district court be authorized here to say, substantial benefit or no, I think there was an equitable conduct here, that's a reason enough. Since my power is derived from this authority to do equity, if there was an equitable conduct, that's a sufficient reason to deny fees. And then layered on top of that, we've got to decide whether there was an abuse of discretion. It seems sort of like abuse of discretion on steroids. Abuse of discretion about equitable authority. That's not what the district court did. So if the court thinks that that's the analysis the district court has to engage in, I think it would have to remand for the district court to do that. But more importantly... The district court, in effect, said you didn't contribute anything. Yeah, nothing. All right. What portion of the fee did you tell the district court you should have? We said... Specifically? 57% of it, because... 57%? Yes, 57% of the claim forms that are going to be paid were submitted in the Arkin settlement in Illinois, and they were not submitted in the Preston settlement. So you're talking about 5743? Right, and in the alternative, we said, even if we don't get 57% of the whole amount, what about 57% of the... Or what about... I'm sorry. You're looking for 57% of the fee the court is awarding to the bond. Right. Or 25% of what they were going to get paid in the Arkin settlement, which was $493 per claimant, right, which would be around $800,000. Even if the district court had paid us less than that. Right? And said, you did confer some benefit by saving the statute of limitations and by getting these 1600 claim forms in Arkin, but you're now entitled to $800,000. I probably wouldn't be in front of you today. Okay? It's the district court's determination that we conferred no benefit whatsoever, no substantive benefit, no independent benefit on this class. It's an abuse of discretion. It's clearly erroneous, and the court should reverse. Okay, very well. Thank you so much. Mr. Bach, you have 15 minutes. Good morning, Your Honors. My name is Philip Bach. May it please the court. I'm here with David Oppenheim, who's an attorney from my office, and Robert Hatch, who's an attorney from my office. And since we all worked on the case, we all came here. And I don't know to the extent, is there any extent that I need to tell you that this isn't some kind of a personal grudge match and I don't have Machiavellian intents and we're just competitors in the same space? Rule 23 in the case law sets up this thing where lawyers are allowed to be competitors, trying to get money and trying to enforce laws and that sort of thing. And that's what we did. And just because we have had these encounters, it's not like a grudge match and it's not. But I think. Counsel, what difference does that make? It doesn't make a difference to me, but it makes it. They started off with that sort of thing. Let's come closer. Okay. Thank you, Your Honor. This is an interesting issue. Can they be disqualified from attorney's fees payment for the substantial assistance that they inadvertently or inadvertently rendered because they got caught in over-aggressive attorney's fees pursuit. Inequitable conduct, we can call it, for present purposes. That's an important issue. Why don't we address that? I would be happy to, Your Honor. In the TTA decision, the court wrote, as it appears, Bok-Hatch was indeed motivated by a desire to grab attorney's fees instead of a desire to secure the best settlement for the class, it violated its ethical duty to the class. If you substitute WANSA for Bok-Hatch in that quote, that's what we're describing here. Their settlement was a desire to secure the biggest fees for them and not for the class. I heard Mr. Harris say that they could have gotten the same fee here, but they couldn't have. They would have gotten 25% as the benchmark in the Eleventh Circuit. If you want a third, you're going to have to show your Lodestar, and as Judge Carnes said, they're going to add 10 multiplier. They weren't going to get a third. Does the record shed any light on why this case went to Illinois other than because it did? They gave three reasons. One is the convenience of the record. I'm talking about in terms of evidence. Does the record tell us anything other than argument? It was just that they agreed to. They agreed in this term sheet that they would dismiss the case from federal court. Both sides agreed to dismiss Arkin 1. Yes. And both sides agreed to refile at Illinois. The plaintiff did, yes, and that was on the same day. Well, the plaintiff went. Exactly. Smith didn't agree to. They agreed, but they didn't file it. Right. I understand. They had the settlement negotiation. Right. The jams. Yes. The Middle District ordered them to go to mediation. They went to mediation. They agreed to settle. Right. And then they went to Illinois. And they dismissed the case and went to Illinois, filed a new case and settled it there. And the judge rightly said, what are you doing here? And he said, I think under the existing case law in the Seventh Circuit, you're going to get paid based on the claims that are submitted. So then the firm submitted a 20-page brief or so that's in the record about why they're entitled to a third, that if they make it available, it doesn't matter how many people claim, they get a third of $21 million. And then the judge granted preliminary approval without saying he was going to do that. We didn't do a discovery on this stuff. This stuff is interesting, but this isn't the class action. Well, it all creeped into the record, basically. Yeah. Yeah. Of this case. Right. And picking up on what Judge Card's point, the question is whether all that's relevant under the abuse of discretion standard. Yeah. I mean, the judge said yes is the answer, I would say. The judge is. This judge abuses the discretion either misapplying the law or making erroneous fact findings. Right. The judge made fact findings. So the question is, in applying the law, where does this evidence fit in? Yeah, she didn't. The judge did her job. She didn't. Didn't do that. She didn't do those things. No. She heard what they said. She took this under advisement. She went back and read declarations. She took time to write an opinion just about this. And she's a nice enough, you know, so much that she's not going to say you're bad people. She said, you say this and you said that, but you didn't explain this and you didn't explain that. They did. But counsel, the problem, though, is she made fact findings which are clearly erroneous. She said, you know, they didn't do anything. They didn't have the class members at all. And that's just simply not true. Well, I think it's a substantial benefit. They didn't do a substantial benefit. It's like they did an incidental benefit. They accidentally produced some benefits of the class when they were trying to produce it for the. Sorry. How can you say that bringing in what turned out to be 57% of the class, and there's evidence that the named plaintiff didn't know about it, and there's no evidence he would have found out about it, but from the fact they sent out a notification. Well. And to say that's not a substantial benefit, I'm not sure I understand the meaning of substantial in that context. Okay. On the claim form idea, the defendant sent the notice. The defendant's trying to get due process. They sent notice. They paid for the notice. These people didn't pay for it. So they were deferring a substantial benefit. WANCA was responsible for them sending out the notice. But we weren't up there and filing the complaint and doing the discovery that WANCA did initially and causing the settlement that resulted in the class notification that brought the named plaintiff and many others into the case. Right. In fact, most of the class. Well, I mean, yeah, the class members were told, here's a proposed settlement for $500, raise your hand if you want money, and tell us if it was your fax number. The defendant paid for that. The deal was canceled. Pressman, Inc. submitted a claim. If you want to, you can either opt out of a class action or you can stay in a class action, and you can object, but if you don't submit a claim form, you don't get paid. So even Pressman submitted a claim. Fifty-seven percent of the people did submit claims for $500. Now they're getting $500. Now they're getting $1,100, not because of anything they did. And then so when we settled the case, I gave them the substantial benefit of that. We could have said, no, no, you need new claim forms or the old ones. Counsel, you talk about everything that you did after you came into the case. Is there any evidence that this case would ever have been filed but for one? No, there isn't. There you go. It's just, is filing a case a substantial benefit when what you were doing was trying to take? Filing a case is a substantial benefit to getting the case resolved. I mean, come on. We'll take it. You know, they came across a vase in some person's house, and they said, hey, you could get a lot of money for this vase, and they went and they found somebody who would pay for it. And they told the person, hey, you're going to get $820,000, and they said, that's great. What are you getting? $7 million. And then the person doing the deal canceled it because it stopped. Counsel, counsel, I understand the technique. I used to use it myself. You're blurring the issue. Okay. I'm sorry. There are two issues here. One is, did they convey a substantial benefit? And the second one is, notwithstanding that, if they conveyed one, should they be denied attorney fees anyway? I understand. There was a benefit of filing the case, and there was a benefit of issuing discovery. But there wasn't a benefit of sending those claim forms. All those people could have sent them in our settlement. They didn't have to because we said, no, why should they do the same thing again? They're all in, plus everybody else that wants them now. And that's not a benefit that they conferred. That's a benefit we conferred. We didn't have to honor those claim forms or make them part of the settlement. The defendant wasn't going to require it. We did that. Can I ask you just a follow-up question about this? So, I mean, was it an abuse of discretion for the district court to conclude that, in all likelihood, one of 45,000 people might have pursued this lawsuit separate and apart from what the Wants Affirmed did? I mean, it seems to me sort of speculative to say there's no way that this lawsuit would have come into being without Wants' participation. I mean, there are 45,000 people in the class, right? Right. It's true, but it's also true there's no evidence they would have. But you're right. When 45,000 faxes, that's 45,000 cases. There's only a certain number of firms that do this kind of work. And if somebody sees somebody else file the case and they're going and going, they don't then file it because one of their guys got the same fax or whatever. So I don't know if we would have filed it. Frankly, I don't think we would have because we didn't have the fax. But there's other firms that might have who might not have filed it because they knew that firm had filed it, and they don't want to argue about who's going to be lead counsel and that sort of thing. Like you said, it's speculative. But like Judge Karn said, there's no evidence that the case would have been filed. And maybe this goes to the secondary question, the inequitable conduct question, and not the substantial assistance question or substantial benefit question. But, I mean, I gather that your participation in this case arose solely as a result of the Pressman objection, which arose from what at least Pressman concluded was Wants' sort of misconduct. I don't mean to put a legal sort of like label on it. But, you know, shenanigans, whatever. Is that right? Do I have sort of the facts basically right? It's really Pressman knows us. Pressman received this postcard that said there's a settlement. And he sent it to me and said, what's this about? What's going on? And I pulled the documents, looked at what was going on, and then we had a conversation and talked about what would be the benefit of objecting. Would he be willing to because he does business with Smith? Are they going to be mad? I said, no, they're settling this case, and I think the class could get more money. I was surprised, frankly, that the defendant canceled it because I thought they would change the settlement, add money, do something to make the settlement better so it would get approved, whether it was over my objection or with my support. Instead, they canceled it. So that was a surprise. Mr. Oppenheim put in an affidavit, this docket number 85-1, where he says that he identified 75% of the faxes would have been barred by the statute of limitations under the ARCIN 3 complaint. When they filed the ARCIN 3 complaint, they didn't try to plead polling. They didn't try to plead a back class. They just went four years from the date of filing, excluding the people who had filed the ARCIN 3 complaint. When we filed our case in state court, we alleged tolling. I know the Supreme Court's come down against equitable tolling, but we said here it's equitable tolling is required because the defendant and the plaintiff agreed to throw out that case and move it here. Now it's starting again. Everybody lost their – all these people would lose their claims. I don't know where that would have gone legally or not, but we're the ones who pled those people to keep them in the case and in the class, and their complaint pled them out of the case. Thank you, Your Honor. We just ask that you'd affirm the district court. Okay, very well. Thank you so much. All right, so Mr. Harry, you've got five minutes remaining. Thank you, Your Honor. I would like to point out that at the time ARCIN 1 was dismissed and we went to state court, the Supreme Court had just decided a case called Bristol-Myers Squibb, and some courts were interpreting that to mean that in a federal class action, it has to be limited to residents of the state in which the federal court sits. It's kind of a complicated issue, but that's one reason why you would want to settle a class action in a state court, to avoid an objection that the class inappropriately includes class members from other states. No evidence that was. Like, I wasn't in the room at the mediation, and I couldn't disclose what was discussed there if I was. So I just wanted to point out that. So the answer to my question is yes, there was no doubt. Correct. I can't show that, no. Well, Your Honor, I think the strongest claim on our end is as to the 1,633 claims that were filed in the ARCIN case. Obviously, we were the but-for cause of those being filed. We were the but-for cause of all of this. Without our actions, the statute of limitations on all of our claims, the Pressman plaintiff's claims and the ARCIN plaintiff's claims, would have quietly expired in 2021, and nobody would have ever recovered anything. So the answer to the question, did we confer a benefit on the class, I think has to be yes. Was it substantial? Of course, because there would be no benefit for anyone if we hadn't acted. Was it independent of what Bokach did? Of course, because we did all those things prior to Bokach even knowing about the case. Now, I thought the district court said that Bokach, sort of for better or worse, sort of reinvented the wheel and so wasn't relying on the ground that you had plowed. Yeah, that, I mean. Factually? I mean, do you have a basis for disputing that factually, that they did their own homework? Well, everything that they reviewed, we obtained in discovery from Judge Porcelli in ARCIN 1. There was a motion for a protective order that the defendant filed. They wanted to limit us to, you know, just the facts that we received. What we, in fact, had to review and what we got from Judge Porcelli was around 1,300, I believe, fax templates that we determined were plausibly advertisements out of a pool of like 3,200 faxes. There were a lot of faxes that we had to go through. There was a lot of work on our end to do. Now, did Mr. Bok duplicate that work once he got the case? He says he did. I have no way to dispute that, but we did a lot of work on the front end to position this case to settle. We got the ball to the one-yard line. Bokach may have carried it across into the end zone, but that doesn't mean that we did nothing, conferred no benefit on the class to move it down the field to get it there. If Your Honor has no other questions, we ask that the court reverse the district court's denial of attorney's fees. Okay, very well. Thank you both. That case is submitted. We'll move to the hearing.